IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: INTRAMTA SWITCHED | § | |
| ACCESS CHARGES LITIGATION | § | |
| | § | Civil Action No. 3:14-MD-2587-D |
| | § | (MDL No. 2587) |
| | § | |
| THIS DOCUMENT RELATES TO | § | |
| CIVIL ACTION NO. 3:15-CV-0116-D | § | |
| | | |
| MCI COMMUNICATIONS SERVICES, | § | |
| INC., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:15-CV-0116-D |
| VS. | § | (MDL No. 2587) |
| | § | |
| ARIZONA TELEPHONE COMPANY, | § | |
| et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by two interexchange carriers ("IXCs") seeking relief related to access

fees that local exchange carriers ("LECs") charge the IXCs to provide access services for

wireless intraMTA calls, three defendants move to dismiss under Fed. R. Civ. P. 12(b)(1)

based on tribal immunity.  For the reasons explained, the court grants the motion and also

grants plaintiffs leave to replead.

I

Because the pertinent background facts and procedural history of these MDL

proceedings are set out in the court's memorandum opinion and order filed today, *see In re:*

*IntraMTA Switched Access Charges Litigation*, ___ F.Supp.3d ___, ___, No. 3:14-MD-2587-D, slip op. at 3-7 (N.D. Tex. Nov. 17, 2015) (Fitzwater, J.), and because the instant motion to dismiss presents issues unique to this case and these defendants, the court will confine its discussion of the background facts and procedural history to what is necessary to understand this decision.

Plaintiffs MCI Communications Services, Inc. and Verizon Select Services Inc. (collectively, "Verizon")[1] have sued hundreds of LECs doing business throughout the United States, alleging that the LECs have charged and continue to charge IXCs access fees on intraMTA wireless calls, for which the LECs are liable under federal and state law. The LEC defendants in this case are Hopi Telecommunications Incorporated, San Carlos Apache Telecommunications Utility, Inc., and Gila River Telecomm Inc. (collectively, the "Tribal Defendants").

The Tribal Defendants are LECs that are wholly owned and operated by federally-recognized American Indian tribes; were created by their parent tribes under tribal (not state) law; are intended to provide benefits to their parent tribes and their members; provide LEC services exclusively on, and within, their parent tribes' reservation lands; are regulated by their parent tribal governments and not by the Arizona Corporation Commission ("ACC") or any other state agency; and do not file tariffs with the ACC. The Tribal Defendants contend that they enjoy the same tribal sovereign immunity from unconsented suit as their

---

[1]In the MDL proceedings, Sprint Communications Company L.P. is also a plaintiff.

- 2 -

parent tribes, that they have not consented to this lawsuit, and that the court lacks subject matter jurisdiction to adjudicate the claims asserted against them. They move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. Plaintiffs oppose the motion.[2]

## II

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party files a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523). If, however, the defendants support the motion with affidavits, testimony, or other

---

[2]This motion is being decided on the briefs, without oral argument.

evidentiary materials, then the attack is "factual" and the burden shifts to the plaintiffs to prove subject matter jurisdiction by a preponderance of the evidence.  *Id.*

III

A

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."  *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998); *see also Michigan v. Bay Mills Indian Cmty.*, ___ U.S. ___, 134 S. Ct. 2024, 2030 (2014) ("Indian tribes are domestic dependent nations that exercise inherent sovereign authority. . . .  Thus, unless and until Congress acts, the tribes retain their historic sovereign authority." (citations and internal quotation marks omitted)). Tribal immunity extends to subdivisions of a tribe, and even bars suits arising from a tribe's commercial activities.  *See Kiowa Tribe of Okla.*, 523 U.S. at 760 ("Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation."); *see also Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006) (holding that casino that "function[ed] as an arm of the Tribe" enjoyed tribal immunity); *Ramey Constr. Co. v. Apache Tribe of the Mescalero Reservation*, 673 F.2d 315, 320 (10th Cir. 1982) (holding that inn that was "a sub-entity of the Tribe rather than a separate corporate entity" enjoyed tribal immunity). Although the Supreme Court has expressed misgivings about recognizing tribal immunity in the commercial context, the Court has also held that the doctrine "is settled law," and that

it is not the judiciary's place to restrict its application.  *Kiowa Tribe of Okla.*, 523 U.S. at

756-60.  The Supreme Court recently explained:

> Among the core aspects of sovereignty that tribes possess—subject, again, to congressional action—is the common-law immunity from suit traditionally enjoyed by sovereign powers.  That immunity, we have explained, is a necessary corollary to Indian sovereignty and self-governance. And the qualified nature of Indian sovereignty modifies that principle only by placing a tribe's immunity, like its other governmental powers and attributes, in Congress's hands.  Thus, we have time and again treated the doctrine of tribal immunity as settled law and dismissed any suit against a tribe absent congressional authorization (or a waiver).

*Bay Mills Indian Cmty.*, 134 S. Ct. at 2030-31 (brackets, citations, and internal quotation

marks omitted).

B

Plaintiffs maintain that, because the Tribal Defendants have admitted that they are not

tribes, tribal immunity does not extend to them.  Citing *Dixon v. Picopa Construction Co.*,

772 P.2d 1104, 1111-12 (Ariz. 1989), they contend that courts have refused to extend tribal

immunity to affiliated entities where doing so would not further the federal policies that

underlie the immunity doctrine, such as preservation of tribal self-determination,

preservation of tribal cultural autonomy, protection of tribal assets, and promotion of

commercial dealings between Indians and non-Indians; that these federal policies are not met

here because the LECs are not engaged in any activity related to tribal self-government, but,

instead, are for-profit commercial enterprises that participate in a competitive national

- 5 -

market for telecommunications services, and the case involves the LECs's relationship with non-tribe affiliated IXCs and Commercial Mobile Radio Service providers; that tribal interests in cultural autonomy and self-determination will not be affected by allowing a suit for damages against these LECs, because the Tribal Defendants' affidavits establish that each was established for purely commercial reasons and not in an effort to promote, develop, or protect tribal culture; that immunity would not further federal policies seeking to protect tribal assets, especially where, as here, insurance coverage and corporate incorporation protect tribal assets; and the federal government's policy of promoting commercial dealings between Indian tribes and non-Indians will be furthered by withholding immunity because, if a LEC cannot be sued for damages when it violates state and federal telecommunications law, other carriers will be reluctant to interconnect with it, to the detriment of that LEC's customers.

The Tribal Defendants reply that they are arms of their parent tribes and are therefore protected by tribal sovereign immunity. They maintain that, as tribally owned and controlled telecommunications companies, not only are they providing important benefits to their reservations and members, but the telecommunications and broadband services they provide their members—including access to health, education, and emergency services—are fully consistent with the federal government's longstanding policy of encouraging tribal self-sufficiency and economic development.

C

When a "tribe establishes an entity to conduct certain activities, the entity is immune if it functions as an arm of the tribe." *Allen*, 464 F.3d at 1046; *see also Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1287-88 (11th Cir. 2015) ("[W]e agree with our sister circuits that have concluded that an entity that functions as an arm of a tribe shares in the tribe's immunity."); *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010) ("Tribal sovereign immunity may extend to subdivisions of a tribe, including those engaged in economic activities, provided that the relationship between the tribe and the entity is sufficiently close to properly permit the entity to share in the tribe's immunity." (citing cases)); *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 29 (1st Cir. 2000) ("The Authority, as an arm of the Tribe, enjoys the full extent of the Tribe's sovereign immunity."); *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000) (holding that entity that "serves as an arm of the tribe . . . is thus entitled to tribal sovereign immunity"). "The question is not whether the activity may be characterized as a business, which is irrelevant under *Kiowa*, but whether the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe." *Allen*, 464 F.3d at 1046.

The court concludes that, for purposes of determining the availability of tribal immunity, the Tribal Defendants have adequately demonstrated that they operate as arms of

their respective tribes.[3]

In extending tribal immunity to a casino owned and operated by an Indian tribe, the

Ninth Circuit concluded in *Allen* that

> [w]ith the Tribe owning and operating the Casino, there is no question that . . . economic and other advantages inure to the benefit of the Tribe.  Immunity of the Casino directly protects the sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity in general.  In light of the purposes for which the Tribe founded this Casino and the Tribe's ownership and control of its operations, there can be little doubt that the Casino functions as an arm of the Tribe.  It accordingly enjoys the Tribe's immunity from suit.

*Id.* at 1047 (citations omitted).[4]  The Tribal Defendants have adduced undisputed evidence

that they are organized, operated, chartered, and wholly owned by their respective Indian

tribes; that they were created under tribal law; that they were created to upgrade and improve

telecommunications services on the reservations of their parent tribes and that they provide

LEC services exclusively on and within the reservations of their parent tribes; that they are

---

[3]Plaintiffs contend that the Tribal Defendants are not entitled to immunity because they cannot meet the federal policies that underlie the immunity doctrine, as set forth by the Supreme Court of Arizona in *Dixon*, 772 P.2d at 1111-12.  This court, however, is not bound to follow *Dixon*.  Moreover, the Supreme Court has not "drawn a distinction between governmental and commercial activities of a tribe." *Kiowa Tribe of Okla.*, 523 U.S. at 754-55.  And more recent federal decisions have uniformly extended tribal immunity to entities that function as an arm of a tribe, without considering whether doing so would further the federal policies underlying the doctrine.  *E.g., Allen*, 464 F.3d at 1046-47.

[4]Plaintiffs contend that this court should not rely on cases such as *Allen*, in which tribal immunity was granted to casinos wholly owned and operated by tribes, because "these entities are *sui generis* in federal Indian law."  Ps. Br. 7.  Plaintiffs have failed to show, however, that courts distinguish the availability of tribal immunity on this basis.

regulated by their parent tribes, not the ACC, and that they do not file tariffs with the ACC; that they are organized under a Charter of Incorporation or Articles of Incorporation and Bylaws issued by the governing body of their parent tribes; that their organizational documents describe economic, social, and other benefits that the Tribal Defendants are intended to provide their parent tribes; that members of their Boards of Directors are appointed by the governing bodies of their parent tribes; and that their revenues inure to the parent tribes.   Given these undisputed facts, "there can be little doubt that the [Tribal Defendants] function[] as an arm of the Tribe."   *Id.*

IV

Plaintiffs contend that, under binding Fifth Circuit precedent, tribal immunity only bars claims for damages, not suits for declaratory or injunctive relief.   They posit that because they have pleaded claims for declaratory relief, the court has subject matter jurisdiction.   The court disagrees with plaintiffs' application of this rule to the parties they have sued.

In *TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676 (5th Cir. 1999), on which plaintiffs rely, the Fifth Circuit explained:

> The distinction between a suit for damages and one for declaratory or injunctive relief is eminently sensible, and nothing in *Kiowa* undermines the relevant logic.   State sovereign immunity does not preclude declaratory or injunctive relief *against state officials*. *See Ex Parte Young*, 209 U.S. 123 (1908).   There is no reason that the federal common law doctrine of tribal sovereign immunity, a distinct but similar concept, should extend further than the now-constitutionalized

> doctrine of state sovereign immunity. *Cf. Seminole Tribe v.*
> *Florida*, 517 U.S. 44 (1996).

*Id.* at 680 (emphasis added); *see also Comstock Oil & Gas Inc. v. Ala. & Coushatta Indian*

*Tribes of Tex.*, 261 F.3d 567, 572 (5th Cir. 2001) ("In the case sub judice, the oil companies

sought declaratory relief against the Tribe.  *TTEA* is therefore dispositive on the issue of the

tribe's asserted immunity.  As such, we find that the district court erroneously concluded that

the Tribe was entitled to sovereign immunity against the oil companies' claims for equitable

relief.").

Although *Comstock* and *TTEA* can both be read to say that a suit for injunctive or

declaratory relief can be brought against a *tribe*, *TTEA*'s reliance on *Ex parte Young* suggests

that the Fifth Circuit intended to hold that a suit for injunctive or declaratory relief can be

brought against a *tribal official*.  This is a reasonable interpretation of *TTEA* given that "[t]he

[*Ex parte*] *Young* exception 'has no application in suits against the States and their agencies,

which are barred regardless of the relief sought.'"  *Moore v. La. Bd. of Elementary &*

*Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014) (emphasis omitted) (quoting *P.R.*

*Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).  In general,

"[t]o meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law

must be brought against *individual persons in their official capacities* as agents of the

state[.]"  *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998)

(citation omitted).

But even if this court's understanding of the intent of *TTEA* is unfounded, the

Supreme Court stated in *Bay Mills Indian Community*, which was decided after *TTEA* and *Comstock*, that "[a]s this Court has stated before, analogizing to *Ex parte Young*, 209 U.S. 123 (1908), tribal immunity does not bar . . . a suit for injunctive relief *against individuals, including tribal officers*, responsible for unlawful conduct." *Bay Mills Indian Cmty.*, 134 S.Ct. at 2035 (emphasis added) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978)).  In view of *Bay Mills Indian Community*, the court concludes that a suit for injunctive or declaratory relief may be brought against a tribal official, but not against a tribe itself or a tribal agency.  Although plaintiffs do assert claims for declaratory relief, they have not named a tribe or tribal official as a defendant in this case.  Therefore, the Tribal Defendants are entitled to dismissal under Rule 12(b)(1).

V

Plaintiffs request that, if the court determines that the Tribal Defendants are entitled to tribal immunity, they be granted leave to amend their complaint to assert claims for declaratory and injunctive relief against the appropriate tribal officials.  Defendants do not appear to oppose plaintiffs' request for leave to amend, but they contend that the court should require that plaintiffs file their amended complaint in the appropriate tribal courts and exhaust their remedies there before seeking relief in federal court.[5]

Under the tribal exhaustion rule, as formulated by the Supreme Court in *National*

---

[5]Because the Tribal Defendants raised this argument for the first time in their reply brief, plaintiffs requested and obtained leave to file a surreply to address the Tribal Defendants' arguments regarding tribal court exhaustion.  The court also permitted the Tribal Defendants to file a final reply.

*Farmers Union Insurance Cos. v. Crow Tribe of Indians*, 471 U.S. 845 (1985), and *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9 (1987), "when a colorable claim of tribal court jurisdiction has been asserted, a federal court may (and ordinarily should) give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims." *Ninigret Dev. Corp.*, 207 F.3d at 31. The tribal exhaustion rule is a rule of comity. *Iowa Mut. Ins. Co.*, 480 U.S. at 16 n.8. Accordingly, a plaintiff's failure to exhaust does not deprive the court of subject matter jurisdiction. *Id.* ("Exhaustion is required as a matter of comity, not as a jurisdictional prerequisite.").

Because the Tribal Defendants are moving to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and the tribal exhaustion rule does not implicate the court's subject matter jurisdiction, they are not entitled to dismissal based on their present motion. And because plaintiffs have not yet filed their amended complaint, the court cannot decide under the proper procedural standard whether the tribal exhaustion rule requires that the court refrain from adjudicating plaintiffs' claims against tribal officials and order that plaintiffs proceed in the appropriate tribal courts.

Accordingly, the court declines to grant the Tribal Defendants' present motion based on the tribal exhaustion rule. Instead, the court will permit plaintiffs to file an amended complaint within 28 days of the date this memorandum opinion and order is filed.[6] The

---

[6]For cause, or by agreement of the parties and with court approval, the court will extend the deadline for plaintiffs to replead.

Tribal Defendants can by appropriate motion raise the tribal exhaustion rule anew if they have grounds to do so.

\*     \*     \*

For the reasons explained, the court grants the Tribal Defendants' Rule 12(b)(1) motion to dismiss and also grants plaintiffs leave to replead.

**SO ORDERED**.

November 17, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE